# McCune *v.* Lytle.

*Arbitration—Award—Discontinuance of suits.*

Where one or the other of two persons controls various pending suits, they may agree to discontinue them, and submit all matters in controversy between themselves to arbitrators, and if they do so, neither party, after the award, will be heard to assert that the other party had no authority to agree to the submission.

*Equity—Equity practice—Cross-bill.*

The established rule in chancery practice is, that the defendant cannot have affirmative relief against the plaintiff even in the subject-matter of the suit, except by a cross-bill; but, among the exceptions to this rule, where a defendant may have a decree in his favor without a cross-bill, is a bill for accounting, if a balance should be found due the defendant.

*Arbitration—Equity—Accounting.*

Where parties to an equity suit for an accounting agree to discontinue the suit and submit the controversy to arbitrators, the arbitrators may award an accounting against the complainant, notwithstanding the fact that no cross-bill was filed.

*Arbitration—Revocation—Contract.*

Where an agreement to arbitrate is a mere naked submission, either party may revoke it before the award, but if it has become a contract between the parties, it can then be revoked only by mutual consent.

Where parties to an equity suit agree to discontinue the suit, and submit the controversy to arbitrators, and it is agreed that each party shall pay one half of the costs of the suit, one half of the stenographer's charges, and one half of the arbitrators' fees, and the case proceeds before the arbitrators for more than three months, and the testimony is almost concluded, one of the parties cannot revoke the submission. In such a case the mutual promises of the parties are the mutual considerations which make their submission a contract, and it is immaterial that none of the costs or charges had been paid at the time of the notice of revocation.

*Arbitration—Suit on award—Rule of court.*

Where parties agree to arbitrate, but do not make the agreement to submit a rule of court, the party in whose favor the award is made may sue on the award.

Argued May 7, 1900. Appeal, No. 334, Jan. T., 1899, by defendant, from judgment of C. P. Fayette Co., Dec. T., 1897, No. 391, on verdict for plaintiff, in case of Adley C. McCune v. Henry M. Lytle. Before GREEN, C. J., McCOLLUM, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Assumpsit upon an award of arbitrators.

The case was tried by the court without a jury under the act of April 22, 1874. Before REPPERT, P. J.

The facts sufficiently appear by the opinion of the Supreme Court.

*Error assigned* was the judgment in favor of the plaintiff.

*D. T. Watson* and *William Yost*, with them *Guiler & Par-*

*shall,* for appellant.—We earnestly contend that under the pleadings of this equity proceeding, no such decree could have been made against the plaintiff, and the arbitrators were bound by the pleadings. They cannot do what neither a court of chancery nor a jury could do, that is, enter a decree or find a verdict which is wholly inconsistent with the pleadings in the cause referred: McCracken v. Clarke, 31 Pa. 498; Coleman v. Lukens, 4 Whart. 347; Henness v. Meyer, 4 Whart. 358; Soxman v. Soxman, 3 P. & W. 44; Bachman v. Reigart, 3 P. & W. 270; Stewart v. Abrams, 7 Watts, 448; Scott v. Barnes, 7 Pa. 134.

Where a defendant seeks the aid of a court of equity for the purpose of enforcing his rights, he must file a cross-bill or affirmatively make complaint: 2 Daniell's Chancery Pleading & Practice, 1550; Williams v. Church, 193 Pa. 120; Freeland v. South Penn Oil Co., 189 Pa. 54.

The submission of a bill in equity to referees is unauthorized by the Arbitration Act of June 16, 1836, P. L. 717: Cotton v. Babcock, 64 Pa. 462; White's App., 108 Pa. 473; Danville, Hazleton & Wilkes-Barre R. R. Co.'s App., 81* Pa. 326.

The submission was revoked: White's App., 108 Pa. 473; McKenna v. Lyle, 155 Pa. 604; Lewis's App., 91 Pa. 359; Benjamin v. Benjamin, 5 W. & S. 562; Brenlinger v. Yeagley, 53 Pa. 464; Groff v. Musser, 3 S. & R. 262; Brown v. Scott, 1 Dallas, 145.

It is the province of the court, on this trial, to investigate all the papers and evidence relating to this submission and award, and ascertain, if it can, whether or not the award is within the submission: Wightman v. Pettis, 29 Pa. 283; James v. Sterrett, 137 Pa. 243; Robinson v. Bickley, 30 Pa. 384; Morse on Arbitration & Awards, 64; Adams v. Adams, 8 N. H. 82; Rogers v. Playford, 12 Pa. 181; Chambers v. McKee & Bros., 185 Pa. 105; McCracken v. Clarke, 31 Pa. 498.

*R. H. Lindsey,* with him *James R. Cray* and *D. W. McDonald,* for appellee.—While we do not contest the right of a party to revoke a naked submission at any time before the award, yet the authorities in Pennsylvania also declare with great unanimity that where the submission assumed the form of a contract, upon sufficient consideration it becomes irrevocable:

Shisler v. Keavy, 75 Pa. 79; McGheehen v. Duffield, 5 Pa. 497; White's App., 108 Pa. 473; Pollock v. Hall, 4 Dallas, 222; Grim v. Sarmiento, 18 Phila. 307; McKenna v. Lyle, 155 Pa. 599; Paist v. Caldwell, 75 Pa. 161; Williams v. Tracey & Co., 95 Pa. 308; Lewis's App., 91 Pa. 359; Buckwalter v. Russell, 119 Pa. 495; Andrews v. Lee, 3 P. & W. 99; Rogers v. Playford, 12 Pa. 181; Bingham v. Guthrie, 19 Pa. 423; McCahan v. Reamey, 33 Pa. 535.

A party may by his agreement wholly deprive himself of right of appeal, or even of writ of error: Shisler v. Keavy, 75 Pa. 79; Williams v. Danziger, 91 Pa. 232; Lewis's App., 91 Pa. 359; Aukermiller v. O'Byrne, 2 Mona. 766; Speer v. Bidwell, 44 Pa. 26; Davenport v. Wright, 51 Pa. 292; McCandless v. Young, 96 Pa. 289.

OPINION BY MR. JUSTICE BROWN, October 8, 1900 :

Lytle and McCune, the appellant and appellee, executed an agreement, under seal, to submit to arbitrators all matters in controversy between them "involved in, or in any way concerning," certain proceedings then pending in the court of common pleas of Fayette county, as well as "all questions touching the purchase by H. M. Lytle of the interest of A. C. McCune in, and also in the dissolution of, the Markleton Lumber Company." The proceedings were: (1) The Markleton Lumber Company v. A. C. McCune, No. 378, March term, 1897: (2) The Markleton Lumber Company v. The Oakdale Quarry Company, No. 355, March term, 1897; (3) A. C. McCune v. H. M. Lytle, No. 364, March term, 1897; (4) John Somers v. The Oakdale Quarry Company, No. 377, March term, 1897; (5) Lytle v. Paddock and others, No, 246, in equity. While it is true that others beside Lytle and McCune were interested in these proceedings, yet each had been instituted by one or the other, or at his instance, and one or the other of them possessed and exercised the authority of a plaintiff in each of the suits. One or the other had absolute control of each proceeding, and Lytle admitted McCune's authority to act by entering, with him, into the agreement for submission, and it does not now lie in his mouth to rue his bargain, and ask to be relieved from the consequences of the award because of alleged lack of authority by McCune to agree to the submission: Summerville v. Painter,

44 Pa. 110. He knew just what authority McCune had and what his interests were in the several suits when the agreement was executed. Besides, the submission was of all matters in controversy between them alone in the proceedings named. If there were others interested in these proceedings, the agreement of submission by Lytle and McCune could not have bound them; and it is sufficient to say that it does not pretend to include them. Lytle and McCune acted only for themselves, and, in doing so, neither exercised any authority that he did not possess to control the proceedings that were then pending in the common pleas. The Markleton Lumber Company, at the time the first two suits were brought, was practically Lytle. He had conducted the business after February 1, 1896. These two suits were both instituted for the recovery of the amount due on a promissory note for $1,000 and were under the control of Lytle. The next, to March term of 1897, No. 364, was between McCune and Lytle. The suit of Somers v. The Oakdale Quarry Company, No. 317, March term, 1897, as found by the court below, seems to have been brought at the instance of McCune and to have been under his control. The equity proceeding was instituted by Lytle against McCune and others, and the prayer was " for a decree for an accounting." The bill alleged misconduct and mismanagement of the company's business by McCune, resulting in loss to Lytle and profit to McCune, and prayed that an account might be stated and a report made of the balance due the complainant from each of the respondents; but it is most manifest, from the allegations of the bill, that what Lytle wanted was an accounting from McCune. The sixth and last matter submitted to the arbitrators related to the purchase by Lytle of McCune's interest in the Markleton Lumber Company and the dissolution of the same. All the matters submitted were those in controversy only between the parties to the agreement and, as one or the other of them had control of each of the proceedings in the court of common pleas, it was competent for them to agree to discontinue the same and settle all disputes therein pending between them before another tribunal of their mutual selection.

As a result of their consideration of the matters involved in this last proceeding, the arbitrators found the largest portion of their award was due in it to McCune; but it is contended

that, inasmuch as McCune had not asked for affirmative relief by filing a cross-bill, the arbitrators exceeded their authority in finding anything due to him in that particular proceeding. It is true, as is said by FELL, J., in Freeland v. South Penn Oil Co., 189 Pa. 54, that " the established rule in chancery practice is, that the defendant cannot have affirmative relief against the plaintiff, even in the subject-matter of the suit, except by a cross-bill ; but, among the exceptions to this rule, where a defendant may have a decree in his favor without a cross-bill, is a bill for accounting, if a balance should be found due the ' defendant." The largest sum involved in the award was, as we have just said, the amount that the arbitrators found was due from Lytle to McCune in the matters in controversy between them in this equity proceeding, and it is most earnestly contended by the appellant that at least so much of it is invalid.

The agreement to submit to arbitrators does not refer to any act of assembly, nor does it bind the parties to it, or the arbitrators, to proceed in accordance with the provisions of any statute. This agreement the parties had a right to make, and it gave the arbitrators power to act. After its execution, there was no longer to be a pending suit in equity. The contemplation of the parties was clearly a discontinuance of this and all the other proceedings, and all matters in controversy between them, " involved in, or in any way concerning," this proceeding in equity, were to be settled and adjusted by the arbitrators. Such a submission the parties to it have an unquestioned right to make, and it should be faithfully adherred to, unless fraud or corruption or gross misbehavior by the arbitrators should vitiate the award made in pursuance of it; for " interest reipublicæ ut sit finis litium" is no less true of proceedings in equity than at law. But the appellant complains and says, as stated, that the arbitrators should not have found any award in favor of McCune, in considering the matters between them in the equity proceeding, because he was entitled to no affirmative relief, not having filed a cross-bill. The bill filed prays " for an accounting," and the complainant evidently wished it to be from McCune. He expected a decree in his favor against the latter, and went into a court of equity for it. Before he can get it there, he must be willing to do equity. When asking that

McCune account to him, he must be willing to account to Mc-Cune, and when demanding that the latter pay him any balance found to be due, he must, at the same time, agree to submit to a decree that he pay what he may owe on the accounting. It is undoubtedly true, as a rule in chancery practice, that a defendant must rely upon his cross-bill for affirmative relief against the plaintiff, even in the subject-matter of the suit; but, among the exceptions to this rule, as before stated, is a bill for an accounting, if a balance is found due the defendant: Freeland v. South Penn Oil Co., supra. Such was the bill filed by Lytle, and the reason why no cross-bill was needed from McCune before he could ask for relief, is given by our Brother FELL in the case just cited: " The theory on which relief is granted the defendant without cross-bill in these cases is, that the court will entertain the original bill only on condition that the plaintiff consents to the same justice being rendered to the defendant that he asks for himself." All matters in controversy between these parties "involved in, or in any way concerning " this proceeding in equity, were submitted to the arbitrators, whose finding was to be finally binding upon both, without right of exception or appeal, and we need simply add that, under such a submission, McCune was not even bound to invoke the exception to the rule which requires a cross-bill from the defendant when entitled to affirmative relief from the plaintiff, for, as was said in McCahan v. Reamey, 33 Pa. 535, "each party agreed to take the risk of mistakes by the referees ; " and in Grier v. Bilger, 13 Pa. 58, " The matters in variance in a cause may be submitted, before there are any pleadings at all. The parties voluntarily go before judges of their own choosing, who never see the pleadings, who would not understand them if they did, and who have not the advice of a court, as jurors have, to assist them in moulding the form of their award to the nature of the counts in the declaration, where there is one ; and to overturn it, for want of what the parties had agreed to dispense with, would be anything but just."

In pursuance of their appointment, under the agreement of submission, the arbitrators met the parties in interest from time to time during a period of more than three months, and, on July 29, 1897, "when the taking of the testimony was almost concluded," according to the finding of the court below,

Lytle served a notice upon the arbitrators that he revoked the agreement, so far as the equity suit was concerned. On the next day, his counsel appeared and argued the case before them, and, after arguments on both sides had been concluded, he, subsequently, on August 2, 1897, notified the arbitrators that he revoked the agreement to submit as to the matters involved in the other suits. In thus attempting to revoke, he gave neither reason nor explanation, and we cannot assume that any existed. If the agreement was a mere naked submission, a naked power to refer the subjects of controversy to arbitrators, either party could have revoked it before the award; but, if it had become a contract between them, it bound each as such, and could then be revoked only by mutual consent. Turning to it, we find that provision was made for the discontinuance of the proceedings then pending, and the payment by each of the parties to it of one half of the docket costs therein incurred. It is also provided for the employment of a shorthand writer, and the transcribing of the testimony to be taken, the costs of which as well as the fees of the arbitrators were to be borne equally by the parties. We need not refer to the advantages enjoyed and the disadvantages suffered by the respective parties after the proceedings had progressed before the arbitrators without objection or notice of any intention to revoke, until the testimony had practically all been taken, for there is ample upon the face of the submission itself to show that it was a contract or agreement between the parties, and as such, irrevocable, though the discontinuances were not actually entered of record and the costs paid before the arbitrators made their award. The parties had agreed to discontinue and pay the costs in equal proportion, and their mutual promises were the mutual considerations which made their submission a contract. Before the award was made, McCune paid one half of the costs taxed in the cases mentioned in the agreement to submit, and discontinued the two suits brought by him or at his instance. Subsequently, he paid one half of the stenographer's charges and one half of the arbitrator's fees, in accordance with his undertaking in the agreement. It is true he did this after Lytle had served his notice of revocation; but as no time was fixed in the agreement when the discontinuances were to be entered or the costs and charges paid, Lytle cannot, with good grace, now com-

plain that this part of the agreement should have been sooner complied with. Full compliance was impossible before the award was made, for only after a finding by the arbitrators could the cost and expenses of the proceedings before them, including their own fees, be ascertained. It does not appear that Lytle ever discontinued the suits instituted or controlled by him, or paid his share of the docket costs, and he certainly cannot urge his own default as a reason why he should not be bound by the award against him. By going on before the arbitrators without objection, he treated that as done which he and McCune had agreed to do, and even if he could have insisted upon formal discontinuance and payment of docket costs before the arbitrators entered upon the discharge of their duties, he certainly could not do so after the proofs had all been submitted and nothing remained to be done except the filing of the award. So well is it settled that when an agreement to submit assumes the form of a contract upon a sufficient consideration, it becomes irrevocable, that reference is hardly necessary to the following authorities:

" While the general power to revoke a submission is well settled, yet after its execution it is beyónd the dominion of either party, when the submission has assumed the form of a contract upon a sufficient consideration. Hence, a submission to a final reference, in consideration of a discontinuance of pro-. ceedings in chancery, for an account, was held to be irrevocable : " McGheehen v. Duffield, 5 Pa. 500 ; Shisler v. Keavy, 75 Pa. 79. " What is termed a naked power to refer a subject of controversy to arbitration is undoubtedly revocable, but, where the agreement partakes of the nature of a contract, whereby important rights are gained and lost reciprocally, and the submission is the moving consideration to these acts, a different rule prevails. Such agreements are compromises and should be faithfully adhered to, unless there has been fraud or corruption or gross misbehavior by the referees : " Paist v. Caldwell, 75 Pa. 161. In White's Appeals, 108 Pa. 473, there was an agreement of reference in a pending equity suit after an examiner had been appointed. The referees were to be judges both of the law and the facts. Their decision was to be final and conclusive, and both parties expressly renounced the right to except thereto, or to take a writ of error or appeal. After this agreement had been executed by the parties, the court was

asked to vacate the appointment of the examiner, and it was vacated. Plaintiff filed a formal revocation of the agreement to submit to arbitrators, and gave notice thereof to the arbitrators and the defendant. The arbitrators subsequently filed an award in favor of the defendant, and we held that the submission was not a bare agreement to refer, but that it was founded on a new consideration, involving the relinquishment of valuable rights, and was irrevocable. In Grim v. Sarmiento, 18 Phila. 307, our Brother MITCHELL, then on the lower court, concisely declared the law when he said : " The rule that a submission to a referee or arbitrator is revocable at any time before award has several exceptions. First, it is settled in this state, at least, that, if the submission was upon a consideration, it is no longer a naked authority, but a contract, and is not revocable."

Instead of entering judgment on the award, suit was brought upon it. This was McCune's right. He might have had the agreement to submit made a rule of court, and the award a judgment of the court; but that was not his only remedy. He could resort to his remedy at common law and sue on the award: Morse on Arbitration and Award, 575. We have not been persuaded that the award was not within the submission, and no sufficient reason having been given why the appellant should not abide by it, all the assignments of error are overruled and the judgment entered by the court below is affirmed.