## Cutshall v. O'Brien

*Martin A. Kutler* and *Irving W. Coleman*, for plaintiff.

*Robert E. Haas*, for defendant.

GARDNER, J., December 19, 1955.—Plaintiff brought this action in assumpsit against defendant, which action was predicated upon a "common law" arbitration and award, it being the unanimous decision of the board of arbitrators that John R. O'Brien pay A. Naomi Cutshall the customary 50 percent of the commission from the sale of real estate. Defendant filed answer containing new matter, to which plaintiff interposed a reply.

Pursuant to the Rules of Civil Procedure, depositions were taken.

The parties through their respective counsel stipulated that the matter would be heard and determined by the court without a jury, and from the testimony taken the court makes the following

### Findings of Fact

1. Plaintiff is an adult individual and a licensed real estate broker with her principal place of business located at 629 Turner Street, City of Allentown.

2. Defendant is an adult individual and a licensed real estate broker with his principal place of business located at 508 Hamilton Street, City of Allentown.

3. On or about September 15, 1953, a dispute arose between plaintiff and defendant concerning plaintiff's claim for one-half of the real estate commission received by defendant as the result of the sale of the

Royal Swan, Inc., property located in the Borough of Emmaus, to Lehigh Safety Shoe Corporation by deed dated September 15, 1953, and recorded in the office of the recorder of deeds in and for the County of Lehigh in Deed Book, vol. 812, page 527.

4. That the consideration for the sale of the Royal Swan, Inc., property to Lehigh Safety Shoe Corporation was $67,500, and defendant received a real estate commission of five percent, to wit, $3,375.

5. That as a result of the dispute which had arisen between the parties concerning plaintiff's claim for one-half of the real estate commission, plaintiff lodged and instituted a complaint against defendant with the Allentown Real Estate Board, a copy of said complaint was admitted into evidence.

6. That on March 23, 1954, plaintiff and defendant entered into a written agreement to submit their dispute to the Allentown Real Estate Board Committee on Arbitration and to be bound by the decision of the said arbitrators. The agreement to refer the controversy to arbitrators and to be bound thereby was admitted into evidence.

7. That defendant signed the agreement to arbitrate on March 23, 1954, voluntarily.

8. That at the time defendant signed the agreement to arbitrate on March 23, 1954, he had been a member of the Allentown Real Estate Board of the City of Allentown for "sixteen or seventeen years".

9. That at the time defendant signed the agreement to arbitrate on March 23, 1954, he was a member of the Board of Directors of the Allentown Real Estate Board.

10. That at the time plaintiff and defendant executed the agreement to arbitrate on March 23, 1954, neither party was represented by counsel.

11. That pursuant to the complaint and agreement to arbitrate, the Allentown Real Estate Board Com-

mittee on Arbitration held hearings on or about March 23, 1954, and on or about May 20, 1954.

12. That both plaintiff and defendant had notice of the hearings conducted by the Allentown Real Estate Board Committee on Arbitration.

13. That both plaintiff and defendant attended the hearings held before the Allentown Real Estate Board Committee on Arbitration and both parties were afforded a full and complete opportunity by the arbitrators to present their case and to produce all witnesses and evidence on their behalf.

14. Defendant notified the chairman of the board of arbitrators prior to the second hearing of the board that defendant was unable to obtain a very material witness by reason of the fact that the board had no power to issue subpœnas.

15. That the arbitration board did not have the power of subpœna.

16. That defendant's counsel, by reason of his inability to obtain the material witness, advised the chairman of the board of his willingness to have the matter heard before a judge of the court of common pleas at a trial without a jury.

17. That defendant and his counsel appeared before the board at the time of the second hearing on or about May 20, 1954, and stated to the board defendant's desire to withdraw his signature from the agreement to arbitrate since he was unable to obtain a material witness without a subpœna.

18. That defendant and his counsel advised the board that it was impossible for defendant to proceed, and immediately withdrew from the hearing.

19. That defendant's witness, Daniel Diehl, of the Pennsylvania Power and Light Company, who handled the negotiations between the owners and purchasers of the property, the subject of the dispute, refused to

testify except if he were brought before the board by subpœna.

20. That the board, following the withdrawal of defendant and his counsel, proceeded with the ex parte hearing.

21. The arbitration board was competent, impartial and unbiased.

22. The arbitration board was not guilty of fraud, collusion or bad faith.

23. The hearings conducted by the arbitration board were fair, just and proper.

24. On or about May 21, 1954, the Allentown Real Estate Board Committee on Arbitration unanimously entered an award in favor of plaintiff and against defendant for 50 percent of the commission realized by defendant on the sale of the Royal Swan, Inc., property; a copy of said award was admitted into evidence.

25. That defendant has failed to comply with the award duly entered by the Allentown Real Estate Board Committee on Arbitration.

### Discussion

The only question in this case is whether an award in a common law arbitration is final or whether one of the parties to the agreement to submit to arbitration may withdraw therefrom after hearings were commenced and prior to the rendition of the award. Defendant claims this right to withdraw because he was unable to produce his material witness without a subpœna, and, therefore, he contends the arbitrators proceeded in an arbitrary manner and conducted hearings that were ex parte and unfair. The common law of arbitration and award is applicable since common law arbitration proceedings have not been replaced or abrogated by statute in Pennsylvania: Wark & Co. v. Twelfth & Sansom Corp., 378 Pa. 578; Sukonik v. Shapiro, 333 Pa. 289; Rosenbaum v. Drucker, 346

Pa. 434; Joint Board of Waist & Dressmakers' Union v. Rosinsky, 173 Pa. Superior Ct. 303.

Plaintiff, A. Naomi Cutshall, realtor, filed a written complaint with the Allentown Real Estate Board wherein she set forth defendant's failure to pay her one-half of the commission on the cooperative sale of real estate. Thereafter the parties executed an agreement dated March 23, 1954, as follows:

"The undersigned parties hereby agree to be bound by the decision of the Allentown Real Estate Board Committee on Arbitration in the matter about to be submitted to them for hearing."

The mutual promise of the parties to an arbitration agreement, to abide by the award, constitutes a sufficient consideration to support the contract. Technical words are not required to make a binding reference, and the form of submission is not important if it clearly appears that the intent was to submit differences to arbitration, and to abide by the award: Somerset Borough v. Ott, 207 Pa. 539, 542.

It has also been held in Duddy v. Conshohocken Printing Co., 171 Pa. Superior Ct. 140 at 142:

"Where a *voluntary* contract of arbitration is made providing that the award shall be final, the courts, in the absence of fraud, will not inquire whether the award was warranted by the evidence: *Ruckestein & Co. v. J. Kaufman & Bros.*, 173 Pa. 199. . . ."

The findings of a common law arbitration are conclusive as to law and fact: Rosenbaum v. Drucker, supra, 437; Canuso v. Philadelphia, 326 Pa. 302, 308; McDevitt v. McDevitt, 365 Pa. 18, 21; Electric Power Construction Co. v. Allen, Lane & Scott, Inc., 367 Pa. 319, 324; Reading Tube Corp. v. Steel Workers' Federation, 173 Pa. Superior Ct. 274.

An arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and

fact, and his award will not be reviewed or set aside for mistake in either; otherwise arbitration proceedings, instead of facilitating the settlement of controversies, would serve but to delay the final determination of the rights of the party: Goldstein v. International Ladies' Garment Workers Union, 328 Pa. 385, 389.

Although our earlier decisions gave a party a right to revoke, at any time before the award, his agreement to submit a dispute, in cases where the arbitrators had not been named, no such distinction now exists and in this respect all such agreements are on the same basis: Bashford v. West Miami Land Co., 295 Pa. 560, 568.

The case of Frederick v. Margwarth, 221 Pa. 418, 70 Atl. 797, involved a suit upon a named arbitrator's award, a case in which defendant's actions were somewhat identical to this suit. In that suit, as here, the arbitrators gave the parties notice of the time and place of a meeting when the parties would be heard as to all matters in dispute. At this meeting plaintiff proceeded to present his claims, defendants refused to present any testimony, denied the authority of the arbitrator to act and served on him a written notice of the revocation of his appointment. The arbitrator passed upon the disputed matters, not before considered before him, and made the award on which the action was based. Affirming a judgment for plaintiff in a suit brought upon the award, Mr. Justice Fell (later Chief Justice) stated, page 420: "The agreement to refer was a part of the contract into which the parties entered, and the defendants could not withdraw from it: Kennedy v. Poor, 151 Pa. 472 (25 Atl. 119); Gowen v. Pierson, 166 Pa. 258 (31 Atl. 83); McCune v. Lytle, 197 Pa. 404 (47 Atl. 190). In the case last cited it was said by our Brother Brown: 'If the agreement was a mere naked submission, either party could have revoked it before the award; but if

it had become a contract between them, it bound each as such, and could then be revoked only by mutual consent.' "

Likewise, our case is to be distinguished from Seaboard Surety Co. v. Commonwealth, 345 Pa. 147, cited by defendant in support of his position. All parties in the instant suit had notice of all proceedings, were present, and defendant withdrew. This was no independent proceeding without proper notice to the parties. There is no basis for any findings that the arbitrators gathered any evidence upon which their award was based, other than the evidence produced at the hearings after full notice to all parties. The opportunity for a "full and fair" hearing was accorded defendant (Wark & Co. v. Twelfth & Sansom Corp., supra), and it was through no fault or behavior of the arbitrators that defendant found it impossible to produce one of his witnesses. If any wrong was done defendant, it was by a court of his own selection and, in part, of his own creation; to that court, the arbitrators, he submitted his whole claim; if they erred in passing on the merits of it, the error is beyond our reach, for he formally stipuated in writing their decision should be final.

Defendant, having ignored the special tribunal which he assisted in creating and with whose decision he agreed to be bound, is not now in a position to question their award: Gowan v. Pierson, supra.

Were we to hold that an arbitration award could be set aside because one of the parties could not produce a witness, then every single common law arbitration award would be subject to attack, thus arbitration proceedings instead of being a quick and easy mode of justice, would be merely an unnecessary step in the course of litigation causing delay and expense, but settling nothing finally, and would be the beginning only and not the end of litigation.

Therefore, the court applies to the facts found the following

### Conclusions of Law

1. The court has jurisdiction over the parties in the subject matter.

2. Common law arbitration and award has not been superseded or abrogated by statute in Pennsylvania.

3. A right of action exists at law to enforce a common law award.

4. The lack of power in the arbitration board to subpœna and compel the attendance of a witness who did not appear voluntarily does not constitute a legal basis for attack on the award, nor give a party to the agreement to arbitrate any authority to revoke it, revocation requiring the mutual consent of all parties to the agreement.

5. The hearings held by the arbitration board were fair and just.

6. Under all the evidence in this case, and the law applicable thereto, a verdict must be rendered in favor of plaintiff and against defendant in the amount of $1,687.50, together with interest from May 21, 1954, in accordance with the award of the arbitrators, and plaintiff is entitled to judgment in said amount.

And now, December 19, 1955, it is ordered, adjudged and decreed nisi that plaintiff, A. Naomi Cutshall, is entitled to recover the sum of $1,687.50, together with interest from May 21, 1954, of defendant, John R. O'Brien. This decision is ordered filed and notice thereof shall be given the respective counsel of record of the filing thereof. If no exceptions are filed thereto within 30 days after service of such notice, the prothonotary shall enter judgment in favor of plaintiff, A. Naomi Cutshall, and against defendant, John R. O'Brien, in the sum of $1,687.50 with interest from May 21, 1954, with costs.

HENNINGER, P. J., March 5, 1956.—Defendant has filed four exceptions to the decision heretofore entered in this case by our former distinguished colleague, Judge Gardner: (1) To finding no. 21 that the arbitration board was competent, impartial and unbiased; (2) to finding no. 23 that the hearings conducted by the board were fair, just and proper; (3) to conclusion no. 4, that lack of power in the board to compel attendance of witnesses does not constitute cause for revoking a previous submission to arbitration; and (4) to conclusion no. 5, that the hearings by the board were fair and just.

We have restudied that decision and the authorities therein cited and concur in the interpretation of the cases and in the decision as entered and deem further discussion of them unnecessary.

We can add nothing to the conclusion that the submission to arbitration was irrevocable. When the agreement to submit to arbitration was made, the particular question to be submitted had been determined, the personnel of the arbitration board was known and each party surrendered to the other the right to have his claim determined by a court and jury.

Defendant contends that the board's insistence upon performing its duties, despite defendant's inability to compel attendance of his witnesses, convicts them of being arbitrary and biased. We do not follow this reasoning. Arbitration has its advantages and disadvantages. Defendant should have weighed these before entering into arbitration.

While the arbitrators might have renounced the responsibility they had accepted at the behest of both parties, they were under no legal or moral obligation to do so. In fact, having accepted the responsibility, it can be argued with much greater force that they were obliged to execute their duties unless *both* parties released them from any further responsibility.

Since there was no evidence of partiality, bias or arbitrary conduct other than the board's insistence upon performing the task given them by the voluntary agreement of the parties, this court is bound to lend its powers to compel compliance with the award.

Now, March 5, 1956, defendant's exceptions are dismissed and judgment is entered in favor of plaintiff and against defendant in the amount of $1,687.50 with interest from May 21, 1954, and costs.