## Collins's Estate.

*Decedent's estate—Claim for care of decedent—Evidence—Insufficiency.*

In a claim for services rendered decedent during the last months of her lifetime, evidence of a vague indefinite promise to purchase a house for the claimant is insufficient to establish a claim for services as housekeeper and nurse.

An intention to pay for services rendered will be assumed, except in cases of parent and child. Where, however, it is apparent that the parties though not so related by blood, in reality bore like connection to each other, the implication does not arise. Under such circumstances, it is necessary, before judgment can be entered, that there be proof of an express contract which must be clearly shown.

If a family relation existed between the decedent and claimant, it was incumbent on the claimant to establish an express contract to pay for the services rendered. If, on the other hand, the family relation did not exist, a presumption arose that the compensation, even if any was contemplated, had been turned over at stated periods, and this presumption cannot be overcome by vague and uncertain testimony, concerning loose declarations by the decedent of an intention to generously reward those about her.

Argued October 18, 1923. Appeal, No. 261, Oct. T., 1923, by John H. McMullen, from decree of O. C. Phila. Co., April T., 1923, No. 1137, dismissing exceptions to adjudication, in the Estate of Catherine Collins deceased. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Exceptions to adjudication.   Before THOMPSON, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions.   Claimant appealed.

*Error assigned* was, among others, decree of court.

*Thomas H. McCaffrey,* for appellant.—The evidence was not sufficient to justify the allowance of the claim: Carpenter v. Hayes, 153 Pa. 432; Miller's Est., 136 Pa. 239; Cummiskey's Est., 224 Pa. 509; Gilbraith's Est., 270 Pa. 288; Applegren's Est., 59 Pa. Superior Ct. 289; Wise v. Martin, 232 Pa. 159; Bradshaw's Est., 243 Pa. 114; Piersol's Est., 27 Pa. Superior Ct. 204; Shenk's Est., 59 Pa. Superior Ct. 467; Winfield v. Beaver Trust Company, 229 Pa. 530; Flaccus v. Wood, 260 Pa. 161; Peiffer's Est., 261 Pa. 209.

*H. Horace Dawson,* for appellee, cited: Pratt's Est., 35 Super. Ct. 110; Fague Est., 19 Super. Ct. 638; Comly's Est., 185 Pa. 208; Stevenson's Est., 272 Pa. 291; Dillon's Est., 269 Pa. 234; Myers's Est., 275 Pa. 10.

OPINION BY PORTER, J., March 14, 1924:

This is an appeal from a decree of distribution.   The court below awarded Agnes McMullen, the wife of a nephew of decedent, the sum of $700 for services rendered decedent as housekeeper and nurse during the last seventeen and a half months of the life of decedent. The appeal is by a nephew of decedent who is entitled to participate in the distribution of the fund, and assigns for error the allowance of said claim.

Catharine Collins died on June 13, 1922, intestate, unmarried and without issue.   As to the claim here involved the evidence disclosed the following facts: The decedent, aged about eighty-four years, was about January 1, 1921, living at No. 321 North 40th Street, Phila-

31, (1924).]          Opinion of the Court.

delphia, of which property she was a life tenant. The friend who had resided with her having died, she had been left alone, and Richard McMullen, a nephew of decedent, with his family, consisting of his wife (the claimant) and a daughter, moved into the house and made their home with decedent until the death of the latter. Mrs. Gartwell, a witness called by the claimant, testified that the decedent seemed very much pleased that her nephew was coming to live with her, that she said "He is my favorite nephew. He is coming here to live with his family. I feel perfectly safe for a home." The witness stated that nothing was said in that conversation as to what arrangements she had made with her nephew, but that some time afterwards the decedent told her "I intend to fix them for life; provide a home for them for giving up their home." Mrs. Coachin, a daughter of the claimant, testified that she and her husband lived in the home of her parents and Mrs. Collins for about two months, beginning in March, 1921, and that she had had conversations with the decedent about what the latter was going to do for Mrs. McMullen: "She (the decedent) told me she was very grateful for Mrs. McMullen's breaking her home up and coming to live with her; that she intended to pay her and pay her well, in a lump sum. If she couldn't pay her that way, she intended to have Miss McCahan buy the home they were living in. She intended to pay her in a lump sum and she wanted to see Miss McCahan to buy the home they were living in at the time and if it was too much for the home she would buy them a small home . . . . . .around $4,500 or $5,000." And again, "Q. Did she designate how much she would pay her, at any time during your conversations with her? A. No; she just said she would pay her well and she would never regret it; she would try and buy them the home they were living in and if she could not that she would buy them a small home." Agnes McMullen, a daughter of claimant, lived with her parents and Mrs. Collins from January,

1921, until the death of the latter, and testified as to the manner in which the claimant had managed the house, done the housework and ministered to the decedent. She testified that when she and her parents first moved there she had a conversation with the decedent, whereupon came the following question and answer: Q. What conversation, if any, did you have with her regarding the payment to your mother for breaking up her home and coming there to take care of her? A. She said that mamma was good to her, she wanted to pay her and pay her in a lump sum; if she couldn't buy the house at No. 321 40th Street, she would buy another house for $4,500 or $5,000 for the services that mamma was rendering." But she further testified that no person was present at the time decedent made these statements. Mary Dorsey, a sister of claimant, testified the decedent, the night before she died, had told her "that the way she was going to pay Mrs. McMullen and her children, for their kindness to her—she was going to buy them a home, was going to buy a home and pay $4,500 or $5,000 for it." Sarah O'Leary testified that two or three weeks after Richard McMullen and his family had moved into the house, she had a conversation with the decedent in which the latter had said that Mrs. McMullen had been very good; that she would not know what to do without her if she hadn't come there; that she was going to pay her and pay her well for what she had done for her. It clearly appeared that none of these statements of the decedent to which witnesses testified had been made in the presence of the claimant. No witness testified to any statement made by the decedent which could be construed to mean that she had made any promise to the claimant or that any contractual relation existed between them. The evidence indicated, and only indicated, that the decedent appreciated and was grateful for the kindness of the wife of her nephew, and that gratitude for that kindness prompted her to make some substantial provision for the future of the family.

Nothing was said in any of the conversations as to how long the services of the claimant were to continue, nor whether the reward for the services was to be dependent upon their duration, nor fixing a definite amount of the reward. The intention of the decedent in desiring to procure a small home for her favorite nephew and his family seemed to arise from a grateful appreciation of their action in making her house the common home. There was nothing in the evidence which would warrant a finding that the decedent had made the claimant or her husband a promise to do anything of the kind. If the claimant was entitled to recover it was not upon the ground of any express contract.

The evidence did establish that the claimant was industrious and managed the house which was the home of herself, her husband, her daughter and the decedent, and that she nursed and took good care of the latter. Does the law imply a contract, by decedent, to compensate claimant for services rendered, under the facts disclosed by the evidence? "It has been said, an intention to pay for work done will be assumed, except in the case of parent and child. Where, however, it is apparent that the parties, though not so related by blood, in reality bore like connection to each other, the implication does not arise. Under such circumstances it is necessary, before judgment can be had, that there be proof of an express contract, which must be clearly shown . . . . . the mere fact that the claimant was a daughter-in-law of the decedent raises no presumption of gratuitous service . . . . . . but if, as here, the claimant had become a part of the family, the contrary is true" : Brown v. McCurdy, 278 Pa. 22, and Goodheart's Est., 278 Pa. 381. If the family relation existed between the decedent, the claimant and the husband and children of the latter, it was incumbent on the claimant to establish an express contract to pay for the services, and no evidence warranting a finding that there was such a contract was present in this case. If, on the

other hand, the family relation did not exist, a presumption arose that the compensation, even if any was contemplated, had been turned over at stated periods, and this presumption cannot be overcome by vague and uncertain testimony, concerning loose declarations of a decedent of an intenion to generously reward those about him: Brown v. McCurdy, supra; Gilbraith's Est., 270 Pa. 288; Flaccus v. Wood, 260 Pa. 161; Cummiskey's Est., 224 Pa. 509; Wise v. Martin, 232 Pa. 159. This presumption is in the present case strengthened by the fact that the decedent was a woman of means who had cash available for her needs. When the claimant and her husband went to live with her she had on deposit in a trust company $603.83 and deposits of considerable amounts were made in that account between that date and her death. During that period this claimant received from the trust company money on checks drawn in her favor by the decedent amounting to $1,-487 and during the same period Richard McMullen, the husband of claimant, received money on checks drawn by the decedent to the amount of over $1,200. No testimony was offered tending to establish what the claimant did with the money which she thus received from the bank. The loose declarations of the decedent of an intention to buy a home for the claimant and the husband and children of the latter, were not sufficient, in view of the principles established by the decisions above cited, to overcome the presumption of payment, and the assignments of error are sustained.

The decree is reversed and the record remitted for further proceedings, the costs of this appeal to be paid out of the fund for distribution.