Deal's Estate.

Argued January 17, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*John Robert Jones,* with him *George A. Baldwin,* for appellant.

*Henry Spalding,* with him *Peter F. Hagan,* for appellees.

OPINION BY MR. JUSTICE BARNES, April 20, 1936:

Seraph J. Deal died, unmarried and without issue, on July 6, 1933, leaving a will which was duly probated, wherein she made substantial legacies and bequests to religious and educational institutions. When the account of her executor was called for audit in the court below, Geneva College of Beaver Falls, Pennsylvania, presented a claim against the estate for $4,361, based upon an oral pledge alleged to have been made by the decedent to pay a portion of the cost of a new central heating plant erected on the college grounds. The learned auditing judge held insufficient the evidence of claimant to prove the pledge, and dismissed the claim. Exceptions to this adjudication were, after argument, overruled by the court in banc, and this appeal followed.

During her lifetime the decedent and her sister, Sarah M. Deal, (who died March 14, 1934, before the date of the audit), gave to Geneva College a library building erected on the campus at a cost of over $100,000 and named the McCartney Library in honor of their pastor. It was heated at first by natural gas from a well on the campus, but in the fall of 1932 it became evident that the well was nearing exhaustion. It was then attempted to heat the library by making a connection with the heating plant of another building of the college for which purpose decedent contributed $1,000. This arrangement proved inadequate, and early in 1933 the college authorities decided it was necessary to construct a central heating plant to supply heat for all the buildings on the campus, including the McCartney Library. Estimates for such a project were obtained, from which it appeared that it would cost from fifty to sixty thousand dollars, of which ten to fifteen thousand dollars would represent the proportion of the cost properly to be allocated to the expense of heating the library. To obtain funds for the

new heating plant the benefactors of the college were approached.

Dr. Robert Clarke, assistant to the president of Geneva College, came to Philadelphia to see the decedent and her sister, because, he testified, they had repeatedly said when they gave the McCartney Library "that they did not want anybody else to have any money in it." At an interview on May 13, 1933, he asked decedent and her sister to defray the cost of extending the new heating system to the library. After some discussion of the difficulty of raising money at that time, Clarke stated decedent verbally promised to pay the amount required, saying, "I said before, I don't want anybody else's money to be in this building, and I will take care of it myself." On this occasion decedent gave Clarke a check for $1,000 and on his return home he wrote decedent and her sister, thanking them for the check. On June 7, 1933, decedent sent him a check for a like sum, for which he again wrote a note of thanks to both sisters. A month later, on July 6, 1933, Seraph J. died without making a further contribution for this purpose.

Meanwhile the college received bids for the construction of the new heating plant, and on June 28th, and July 11, 1933, entered into contracts for the work. The final contract price was considerably below the original estimates, so that it was apparent the cost of heating the library would amount only to about $6,000. Notwithstanding this fact, Dr. Clarke, after decedent's death, endeavored to obtain $15,000 from her sister to pay for the McCartney Library part of the work, and solicited from her a definite written commitment for that amount. It is unnecessary to discuss the evidence in further detail. We wish particularly to point out, however, that the evidence, taken as a whole, fails to show that decedent made a definite promise, or, if any promise was made, whether it was not a joint undertaking on the part of both decedent and her sister. While Dr. Clarke, the soliciting official of the college, testified that decedent, in her sis-

ter's presence, said that she would pay the cost of heating the library, his subsequent actions are entirely inconsistent with and contradictory to his present assertion that she made a definite promise to pay, individually, the total sum required. That Dr. Clarke understood both sisters to be donating equally, as they had done in giving the library, is shown by the fact that he interviewed them together and thanked them jointly for the two checks which he received. Appellant's claim rests entirely upon the testimony of this one witness, and even when viewed in the most favorable light, it entirely fails to measure up to the standard required to establish the claim against this estate with the precision required by law.

Moreover, the manner in which appellant attempts to fix the amount of its claim could not, even if a pledge by decedent had been proved, furnish a proper basis for an award. In computing the total cost of the new heating system—for a percentage of which the present claim is made—appellant includes several items relating entirely to other college buildings, without producing the contracts or giving any explanation; another item for "certain work that was planned" but not begun at the time of the audit, without giving any details whatever; and a further item for "incidental work done by college," as to which no explanation is supplied. It is obvious that the figure arrived at by adding such vague, indefinite and uncertain items falls far short of the positiveness necessary to sustain a claim against a decedent's estate. No award could be based on a figure so loosely assembled.

While, as appellant contends, pledges to charitable or kindred institutions should not be defeated on technical grounds, and constitute binding contractual obligations when accepted and acted upon by the beneficiary *(Board of Foreign Missions v. Smith,* 209 Pa. 361; *Univ. of Pa. v. Coxe's Exrs.,* 277 Pa. 512), this rule does not relieve appellant of the burden of proving that a valid binding obligation existed. And the measure of proof is even

more strict where, as here, the claim is made against a decedent's estate; the proof of such a parol contract as is here asserted must be by as clear, definite and positive evidence as is required to establish such a contract in an action at law: *Hirst's Est.*, 274 Pa. 286; *Schleich's Est.*, 286 Pa. 578; *Elwood's Est.*, 309 Pa. 505. On these matters relating to the quality and credibility of the evidence, the opinion of the learned auditing judge, who saw and heard the witnesses, is entitled to great weight, and his findings, when affirmed by the court in banc, will not be disturbed on appeal if there is evidence to support them: *Houston's Est.*, 318 Pa. 300. With these principles in mind we have carefully reviewed all the evidence presented in support of appellant's claim, and we find no reason to disturb the conclusions of the court below.

Decree affirmed at appellant's cost.