## Windsor Manufacturing Company, Appellant, *v.* S. Makransky & Sons.

Argued April 24, 1936. Before Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Robert T. McCracken,* with him *Ulric J. Mengert,* for appellant.

*Robt. von Moschzisker,* with him *David S. Malis,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 26, 1936:

This is an action for breach of an alleged contract of manufacture and sale. The case was heard by the court below on the statement of claim and an affidavit of defense raising questions of law. The questions of law were sustained by the court below and a final judgment was entered in favor of the defendant, from which plaintiff took this appeal. The error assigned was the entry of the judgment.

The statement of claim avers that on August 31, 1933, a written contract was entered into by the plaintiff, Windsor Manufacturing Company, a corporation engaged in the business of manufacturing worsted fabrics, for the sale of a quantity of such material to the defendant, S. Makransky & Sons, a corporation which makes clothing. Two writings were exchanged between the parties. One is dated August 29, 1933, from the defendant to the plaintiff, and is entitled a "Purchase Memorandum," while the other is from plaintiff to defendant, under date of August 31, 1933, and is termed an "Ac-

knowledgment of Order." The latter was executed by both parties, and is alleged by plaintiff to constitute a valid and definitive contract. Defendant, however, asserts it is merely a memorandum of the negotiations between the parties, and lacks the certainty requisite to a contract. Whether this writing is an enforceable agreement of purchase and sale is the precise question before us.

Upon its face the instrument purports to be a contract. It bears the inscription: "Sold to S. Makransky & Sons, Broad & Lehigh Ave. Phila., Pa." and then identifies the transaction with defendant's "Order No. 1229." There appears in large type thereon the words "worsted fabrics" as indicating the character of goods manufactured and sold by plaintiff. The materials are described therein in detail as to weight, width and length; the quantity is specified and base prices are fixed. The quantity is stated to be 300 pieces; the width of a piece is 58 to 59 inches, and its length is sixty yards. The weight is specified for one description of goods at $15\frac{1}{2}$ to 16 ounces, and for the others at 15 to $15\frac{1}{2}$ ounces. Under the printed word "style" on the document in typewriting are four numerical designations of what is called a "range," and similarly under the printed text "price per yard" the basic prices of goods in each range are given. Below these provisions is typed the clause: "Blanket order—To be specified by Oct. 1st when lines of selling samples are complete." Printed thereon are general conditions which refer to "this contract" and speak of the transaction as "a sale." As stated, the document bears the signatures of plaintiff and defendant.

The word "range" and the numerical designations mentioned are technical terms, which the statement of claim avers it has been the practice of the parties for many years in prior transactions to use in this manner. It is set forth that plaintiff would group the samples of fabrics it was prepared to manufacture in separately numbered ranges. Each range contained various pat-

terns of fabrics with the same weave, finish, kind and quality of yarn, and the price thereof. The word "base" was used to refer to the minimum price of goods in a particular range, except that certain of the patterns in a group commanded a few cents more than the base or minimum price, of which the buyer would be informed at the time the samples were displayed. The number or proportion of the 300 pieces of cloth which were to fall within each of the four designated ranges would be determined or specified in the month of October when the samples of cloth were completed. Plaintiff avers it completed its line of selling samples and displayed them to defendant on October 6, 1933. It is claimed that defendant agreed to make a selection promptly, but after numerous requests failed to do so. Thereupon plaintiff instituted this suit to recover as damages the difference between the cost of manufacture and the contract price of the goods.

The provision of the instrument upon which the present case turns is the election which it gives to defendant to make selection of the style of the fabrics from the samples to be submitted by October 1. The plaintiff contends, and the court below held, that such selection was a condition precedent to the creation of a valid contract, and, without it, there was no complete meeting of the minds of the parties.

From the examination we have made, we are of the opinion that the language of the instrument is strongly indicative of an intention to enter into a present contract of sale. There is nothing in the contract which would point to an intention on the part of either plaintiff or defendant that no contract was to arise until the selection of goods from the samples was made by defendant. The facts indicate a contrary intent. The selection of the style was exercisable only within the definite and prescribed limits of the four range numbers designated, and the length, width, and weight of the goods in each range were fully prescribed. The total quantity of goods

was settled, and the price per yard fixed, any differential in price being ascertainable at the time of the submission of samples. The parties were as specific in the terms of their bargain as the conditions would allow. The legal effect of this instrument was to create mutual rights and obligations operating as a consideration for each other. Each party desired to make arrangements for the future. The manufacturer definitely undertook to hold itself ready to manufacture, sell and deliver at a time certain a quantity of goods specified. The buyer, wishing to be certain of a supply of cloth, obligated itself to purchase the quantity of goods mentioned and to pay at least the minimum price therefor. Each purpose could be accomplished only by executing an immediately binding contract. The selection was an act wholly unilateral, for the benefit and advantage of the defendant, and such right cannot be held to destroy the mutuality of the obligation which was created between the parties. It is clear to us, and the principle is well sustained by authority, that existence of an election within prescribed limits, exercisable by one party to a contract, does not vitiate a contract for uncertainty. In *Jessup & Moore Paper Co. v. Bryant Paper Co.*, 283 Pa. 434, there was an election given to the purchaser to increase the quantity of materials to be delivered each month within certain limits, and the price was variable according to conditions stated in the contract. There it was asserted that the contract was not valid and binding because of uncertainty and lack of mutuality. This Court held that the contract was enforceable notwithstanding the elections therein given, and said, speaking by Mr. Justice Simpson (p. 439): "It is suggested by appellee that the contract lacks mutuality, because, although plaintiff, generally speaking, was required to deliver 150 tons per month, it had the option to deliver 50 tons additional, which, if the contract is effective, defendant had no option but to accept. Carried to its logical conclusion, the argument based on this objection would destroy all options." And on page

441: "Construed as above set forth, the contract under consideration is valid and binding. A definite standard is set for determining the price, and hence the maxim id certum est quod certum reddi potest is applicable, as in effect, is shown by *Van Horn v. Kemena,* 281 Pa. 579." As Mr. Justice SADLER pointed out in *York Metal & Alloys Co. v. Cyclops Steel Co.,* 280 Pa. 585, 590: "When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option while the other has not, or, in other words, because it is obligatory on one and optional with the other."

The principle has also received the approval of this Court in the following cases: *Weimer v. Keiper,* 276 Pa. 358; *Northern Central Railway Co. v. Walworth,* 193 Pa. 207; *Empire Paper Box Corporation v. Hazleton Baking Co.,* 318 Pa. 522.

The appellant has called to our attention the case of *Alabama Grocery Co. v. Hammond,* 285 Fed. 723, 725, (C. C. A. 5, cert. denied, 261 U. S. 621), wherein the Court said: "On the merits, it is contended that no binding contract arose out of the transaction between the parties, because the goods were not accurately described. . . . We are of opinion that the description of the goods is sufficient when considered in connection with the conduct of the parties. In the first place, it is not to be assumed that the parties did not contemplate the purchase of some of the goods of each lot. They were not attempting to do a vain thing, and effect must be given to the contract if upon a reasonable construction that can be done. The goods were all of the same general description, and it is apparent that the right of selection out of the various lots was recognized." See also *Whitman Co. v. Namquit Worsted Co.,* 206 Fed. 549, affirmed 221 Fed. 49 (C. C. A. 1); *Carroll v. Melville Shoe Corp.,* 272 Fed. 49 (C. C. A. 2).

The case of *Penna. Lubricating Co. v. Wilhelm,* 255 Pa. 390, which is relied upon by appellee, presents a dif-

ferent factual situation. There both the offer and the acceptance provided that the sale was "subject to approval of sample drawn from bulk, when submitted." No sample was ever offered and this Court held there was no contract as "the minds of the parties had not met on the quality of the commodity." Whether the parties are merely negotiating a contract, or entering into a present contract, is purely a question of intention. In the case last cited the parties clearly expressed the condition that no contract should arise until the sample was found satisfactory by the purchaser. That is not true in the present case, for here it was the purpose of the parties, in our opinion, to enter into a binding contract at the time. We have carefully examined the cases of *Hutchinson Baking Co. v. Marvel*, 270 Pa. 378, and *Briggs v. Morris*, 244 Pa. 139, cited by appellee, and are convinced that upon their facts they have no application to the present case.

In interpreting the technical terms used in the contract it was proper to consider the meaning given to these terms in the course of the prior dealings between the parties as averred in the statement of claim. Such averments were to be taken as admitted by the affidavit of defense in lieu of demurrer. It is to be borne in mind, however, that there is a distinction to be drawn between averments interpreting the meaning of language actually used in a written contract and those which are inadmissible as introducing by parol testimony additional terms to the contract: *Franklin Sugar Refining Co. v. Howell*, 274 Pa. 190. As we have concluded that the written instrument here possesses within its four corners all the essentials of a definite and valid contract, it follows that we deem it to constitute a sufficient memoranda of the sale to satisfy the requirements of the applicable sections of the Sales Act and the Statute of Frauds.

Judgment reversed, with leave to the defendant to file within fifteen days an affidavit of defense to the merits.