Kaufmann's Estate.

Argued May 2, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Jos. K. Fornance,* for appellant.

*Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,*
with him *Frederick B. Smillie* and *Harry E. Sprogell,*
for appellee.

OPINION BY BALDRIGE, J., September 27, 1939:

This appeal is from a decree of the orphans' court
dismissing exceptions to the adjudication of an account
of a testamentary trustee.

The appellant seeks to surcharge the Pennsylvania
Company for Insurances on Lives and Granting An-

90

nuities, hereinafter referred to as the trust company, one of the three trustees under the will of Morris A. Kaufmann, deceased.

The testator died April 19, 1932, and by his will, dated January 30th of that year, set up a trust, naming his wife, Alice G. Kaufmann, Berthold Strauss, and the trust company as trustees. The widow was given the entire income from the residuary estate for life, with the right to use so much of the principal as she desired.

The question before us is whether the trust company is obliged to pay testator's widow four per cent interest over a certain period on all uninvested trust balances of the estate held by its banking department.

On June 16, 1930, the testator signed and gave to the trust company the following letter: "Dear Sirs: In consideration of my estate being entitled to the protection of the 'Reserve Fund for Trust Balances' created by The Pennsylvania Company for Insurances on Lives and Granting Annuities under and by virtue of the Act of April 3, 1872, securing any uninvested balances of principal and income awaiting distribution, I agree that all uninvested balances of principal and income awaiting distribution in my estate, if any, may be held by The Pennsylvania Company for Insurance on Lives and Granting Annuities on deposit in its Banking Department, upon the understanding that all uninvested balances of principal so on deposit shall bear interest at the rate of four per cent per annum." This letter was written and delivered before testator made his will. The trust company did nothing more than receive it.

The trust company accepted the trust under the will and received, on July 9, 1934, cash totalling $100,541.77 from the estate which had a value of over $600,000. Endeavors were made to invest this money, but on April 30, 1935, almost a year after its receipt, $47,702.63 remained uninvested. Interest, however, at the rate of

four per cent was paid appellant by the trust company to that date on the uninvested balance.

The appellant, in her exceptions, claims four per cent interest on the uninvested balance of the estate held by the trust company in its banking department between April 30, 1935, and August 25, 1937, which, it is agreed, totals $2,196.76, the amount in dispute.

The orphans' court dismissed appellant's exceptions and refused to allow her interest during the period in question, on three grounds, namely: (1) testator's letter of June 16, 1930, was merely an authorization to the trust company to keep the trust funds on deposit in its own banking department, and was not a contract under which it was to pay four per cent on uninvested balances; (2) even if such a contract did exist between the testator and the trust company, it was against public policy and was rendered inoperative by both federal and state laws forbidding the payment of interest on demand deposits; (3) appellant, by her unwarranted objections to the purchase of securities recommended by the corporate trustee, was primarily responsible for its failure to invest the cash, and, therefore, as principal beneficiary, she should not, in equity, be permitted to recover interest from her cotrustee. This appeal followed.

(1) The appellant contends that there existed a contract between the testator and the trust company, by which the latter was obliged to pay interest at the rate of four per cent per annum on all uninvested balances of principal held by the trust company. The appellee, on the other hand, argues that there was no such contractual obligation, that the letter of June 16, 1930, cannot be construed as a promise upon the part of the trust company to pay interest as it was signed by Kaufmann alone and, therefore, did not constitute a contract. In other words, the letter should be regarded simply as evidence of authorization to the trust company to retain the uninvested funds in its own

banking department, subject to a condition to pay four per cent interest, without requiring any contractual performance upon its part; if the interest was not paid, the permission terminated.

In determining this dispute, it is incumbent upon us to try to arrive at the intention of the parties. It is well recognized that if the language used is uncertain or susceptible of more than one construction, "the court may consider the nature and situation of the subject-matter and the apparent purpose or object in making the contract in the form in which it was made or of using a particular expression or sentence. 'The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of an ambiguous contract': Wilson v. Wernwag, 217 Pa. 82, 87 [66 A. 242]": Bangor Peerless Slate Co. v. Bangorvein Slate Co. et al., 270 Pa. 161, 165, 113 A. 190. To the same effect, see Myers' Estate, 238 Pa. 195, 211, 86 A. 89; Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270, 274, 166 A. 862; Calvey v. Coyer, 121 Pa. Superior Ct. 504, 507, 184 A. 279. The general rule governing the interpretation of contracts applies not only where there is an admitted contract under consideration, but also where the controversy is whether there is a contract: Restatement, Contracts §226 (Comment a). "Whether the parties are merely negotiating a contract, or entering into a present contract, is purely a question of intention": Windsor Mfg. Co. v. S. Makransky & Sons, 322 Pa. 466, 472, 186 A. 84.

It must be borne in mind that the letter of June 16, 1930, prepared by the trust company, was in accordance with its practice of requiring express permission of each testator to retain uninvested funds in its own hands. We think it is quite obvious that that was its primary purpose. The letter, written more than four

years before the company received the money and began administering the trust, was signed by the testator alone; it is wholly unilateral and contains no promise, express or implied, upon the part of the trust company to pay interest on uninvested balances. In the absence of any additional undertaking, the duties of the corporate trustee under a trust set up by testator's will, were only those that the law imposed upon it. Here, as in any case where a claim rests upon an alleged contract, the appellant had the burden of showing the appellee's promise to pay four per cent interest on uninvested balances held by it, which we think she failed to carry. The only circumstance in the record which evidences such an intention of the parties is the payment of interest for a certain period. This fact alone did not create an obligation upon the part of the trust company to pay interest indefinitely.

We agree with the learned chancellor that the letter in question is simply an authorization by the testator and is not contractual in character. At most, the phrase "upon the understanding that all uninvested balances of principal so on deposit shall bear interest at the rate of four per cent per annum" is a condition of the testator's authorization to the trust company to retain uninvested balances in its banking department and not a promise to pay four per cent interest on such balances.

(2) In the absence of a contract, the state and federal laws prohibited the trust company from paying interest on demand deposits during the period in question. Article X, section 1003, of the Pennsylvania Banking Code of May 15, 1933, P. L. 624, as amended by the Acts of January 2, 1934, P. L. 128, §1, and July 2, 1935, P. L. 542, §1 (7 PS §819-1003) provides that "The department may, from time to time, limit by regulation the maximum rate of interest which may be paid by a bank or a bank and trust company ......:"

The effective date of the original act was July 3, 1933 (art. XVI, §1601—7 PS §819-1601).

Regulation "A" of the Banking Department, promulgated under the authority of the act above cited, effective October 15, 1935, provides as to demand deposits: "Section 3. A bank, bank and trust company or private bank shall not, directly or indirectly, pay or credit any interest on 'Demand Deposits.' This prohibition shall not apply to ...... (c) certificates of deposit or other contracts or agreements of deposit lawfully entered into prior to October 15, 1935 and in full force and effect upon said date, but which may not be legally terminated or modified by the depository at its option, or without liability ......"

These rules and regulations are in harmony with the Federal Reserve Act of December 23, 1913, as amended by the Banking Acts of 1933 (c. 89, 48 Stat. 162) and 1935 (c. 614, 49 Stat. 684) §371a (12 USCA 371a).

As the trust company had not entered into a prior contract with the estate for the payment of interest, the exemptions stated in section 3(c) are not applicable. Any agreement to pay interest which did not come within the exceptions in these acts and regulations would, under well settled principles, be contrary to public policy and unenforceable because prohibited by statute: Restatement, Contracts §580.

It is unnecessary to pass upon the original charter of the trust company, which, as amended, provided for payment of interest by it "of not less than four percent" upon all sums over one hundred dollars.

Nor is consideration required of the question, whether appellee, by accepting the benefits of subsequent legislation, became subject to the general laws regarding the payment of interest, because, for reasons we are about to state, the appellant is barred from recovery as a matter of equity.

(3) In its adjudication the learned court below stated: "During the period in question, the three trustees

had repeated meetings which were attended by representatives of the corporate trustee, the exceptant co-trustee, together with her counsel, and the third individual trustee. At every one of these repeated meetings the representatives of the corporate trustee presented lists of suggested investments which it desired as appropriate investments for the trust funds remaining uninvested. Investments were not made at each of the meetings because of the objection of the exceptant co-trustee, her counsel, or the other individual trustee ...... *the delay during the period in question, in investing the funds of the trust was, according to the evidence, solely the fault of the life beneficiary."* (Italics supplied).

As above noted, the trust company received $100,-541.77 in cash from the estate on July 9, 1934. At a meeting of the trustees, including the appellant and her counsel, held the next day, investments of $20,000 were all that the parties were able to agree upon. At a second meeting on November 28, 1934, only $8,000 additional investment was concurred in. On April 15, 1935, fifteen days before the trust company stopped paying the four per cent interest, the uninvested balance was $47,707.33. By August 27, 1937, this uninvested balance was reduced to $47.87. Appellee's trust officers testified that although numerous meetings, conferences, and consultations were had during this entire period, at which the company presented carefully analyzed suggestions for the investment of the entire uninvested funds, failure to make investment thereof was due to the appellant's refusal to approve most of the securities suggested by the company.

Competent evidence was adduced to support the finding and conclusion of the auditing judge which, affirmed by the court in banc, will not be disturbed upon appeal: *Deal's Estate,* 321 Pa. 484, 184 A. 453; *Simmons's Estate,* 122 Pa. Superior Ct. 206, 185 A. 871.

Assuming, therefore, that the appellant, as found by

the orphans' court, which, within its sphere, is a court of equity, in which equitable principles apply (*Lonergan's Estate*, 303 Pa. 142, 147, 154 A. 387; *Estate of Harriet B. Laverelle, Dec'd*, 101 Pa. Superior Ct. 448, 450) was primarily to blame for the failure or delay in making investments, it would be unjust to allow her to recover from her cotrustee four per cent interest on uninvested balances for the period in question, even if we take for granted the existence of a contract to that effect between the testator and the trust company. We rest our decision mainly on that ground.

Judgment of the learned court below is affirmed, at appellant's costs.