### Britex Waste Company, Ltd., Appellant, *v.* Nathan Schwab & Sons, Inc.

Argued December 19, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Joseph A. Keough,* with him *Levi, Mandel & Miller,* for appellant.

*Philip C. Pendleton,* with him *C. Brewster Rhoads,* of *Montgomery & McCracken,* for appellee.

OPINION BY CUNNINGHAM, J., April 10, 1940:

Plaintiff, an English corporation, brought the present suit in assumpsit against defendant in the Municipal Court of Philadelphia County. The action was based upon an award of arbitrators in London purporting to have been made pursuant to a provision in written contracts for the sale by plaintiff and purchase by defendant of certain bales of cotton waste. Defendant filed an affidavit of defense. Plaintiff now appeals from an order of the court below discharging its rule for judgment for want of a sufficient affidavit of defense.

Plaintiff's statement set forth two contracts of sale and purchase of cotton waste, dated January 25, and April 19, 1937, respectively, the former for thirty-four and the latter for twenty bales. Each contract contained the following provision relative to arbitration: "Any disputes which might arise during the execution of this contract *will be settled amicably, or if this should not be possible by arbitration* according to the rules of the Liverpool Cotton Association Ltd. The decision of Liverpool will be final and the contracting parties herewith agree not to take any other legal steps." (Italics supplied.)

Defendant refused to accept the cotton waste upon tender of delivery, because "plaintiff did not ship cotton waste of the quality which it had agreed to deliver" and because the second shipment was delayed thirteen days.

The terms of payment under each contract read, "Payment sight draft against documents." Defendant admitted in its affidavit it had refused to accept delivery and had "refused to pay the sight draft covering the agreed prices ...... as provided in said contracts," for the reasons above stated.

Under date of January 17, 1938, the secretary of the Liverpool Cotton Association Ltd., addressed a registered letter to defendant advising that plaintiff had brought to the attention of the president of the association the failure of defendant to pay for the waste. After referring to the contracts and shipments thereunder, the letter continued:

"It is stated that continual efforts were made to get you to take up the documents and accept the goods in the ordinary way, but you have not complied with this request. Presumably, therefore, there must be some dispute in regard to these contracts, which are made subject to the rules of this association.

"Under these rules, if any dispute arises it must be submitted to arbitration, and the president of the association will therefore be glad if you will communicate with him by return mail, but not later than Thursday, 17th February, 1938, giving him the name of the member of this association who will act as your arbitrator or your good reasons for being unwilling to do so.

"I also have to point out to you that, should you fail to comply with this request the president has powers under the association rules to nominate a member to act as arbitrator on your behalf."

To this letter defendant replied under date of February 2, stating at length its reasons for refusing to accept the waste and pay the contract price, but ignoring the specific request that it select its arbitrator. The only reference in defendant's letter indicative of its attitude toward the arbitration provision of its contracts reads: "So far as we are concerned, we have no

further interest in their (plaintiff's) shipments and we have absolutely refused to accept them."

On February 16, the secretary of the association replied that the president "appreciates all you say but considers that your letter is really more in the nature of a statement of case to be submitted to the arbitrators when they consider the matter, than good reasons why an arbitration should not be held."

By this letter defendant was again invited to name its arbitrator and the time was extended to March 23d. The communication concluded: "Failing appointment by that date, the president feels he will have no option except to exercise his powers under the rules of the association and appoint a member to act on your behalf. Of course you will be given every opportunity of writing a full statement of case to the arbitrators, and your letter of February 2d can also be placed before them."

Defendant replied on March 15th that it had "nothing further to add" to its letter of February 2d. Thereupon, the president of the association, in accordance with its rules, appointed an arbitrator for defendant and on March 24th advised it of the name and address of the arbitrator selected by plaintiff and of the one appointed for defendant. The letter concluded with the suggestion that defendant, "write forthwith to either or both these members of the association, giving any statement of case which you desire to submit to them when the arbitration is being held."

The two arbitrators, being unable to agree, appointed an umpire. On May 2, 1938, the umpire rendered an award directing the defendant to pay for the cotton waste in dispute, and stored in New York, at invoice prices, plus storage charges and interest—less an allowance for late shipment of one of the lots, and also less an amount due by plaintiff to defendant under a former arbitration award covering a dispute as to the quality of other goods previously shipped. The net amount of

the award in favor of plaintiff was $1,361.19. This action was brought November 14, 1938, upon the award.

The court below based its decision discharging plaintiff's rule for judgment for want of a sufficient affidavit of defense upon the ground that the averments of the affidavit "clearly show that issues of fact are presented." The familiar rule, that a summary judgment should not be entered when the averments of the affidavit show disputed issues of fact are outstanding, is invoked. If this were an ordinary suit to compel payment of the contract prices at which the waste was sold, we would unhesitatingly affirm the order discharging the rule, because the quality of the waste and the failure to deliver part of it in accordance with the contracts were issues of fact in dispute between the parties.

This, however, is not an ordinary suit for the price of the goods; it is an action upon an *award of arbitrators*. All of the issues of fact originally in dispute between the parties were considered by the arbitration tribunal and disposed of in the award. Hence, the only matter now open to attack by defendant is the *jurisdiction* of the arbitrators. This question, we think, is one of law to be determined primarily by a consideration of the "terms of the submission agreement"—in this case, the above quoted arbitration provision of the contracts. The language of Chief Justice FRAZER, in his opinion affirming a judgment for plaintiff for want of a sufficient affidavit of defense in a suit upon an arbitrator's award, in *Kingston Coal Co. v. Glen Alden Coal Co.*, 312 Pa. 546, 168 A. 677, at page 554, is particularly applicable here: "Only one other matter need be considered and that is appellant's argument that a summary judgment cannot be entered here because there are outstanding several disputed questions of fact, and the averments of the affidavit of defense show that this case is not clear and free from doubt. It is true that generally, upon a rule for judgment for want of a sufficient affidavit of defense, all averments of the affi-

davit must be taken as verity, but this principle has no application where, as in this instance, the action is founded upon an arbitrator's award, and the averments of the affidavit which are said to raise questions of fact pertain solely to matters already heard by the arbitrator and decided by him. See *Brock v. Lawton,* 210 Pa. 195, [59 A. 997]. Although appellant may, by the averments of the affidavit of defense, question the arbitrator's exercise of his jurisdiction as determined by the terms of the submission agreement, in the present case, we are of opinion, the dispute was clearly within the provisions of the contract and the award did not exceed the terms of the agreement."

Questions which were the subject of dispute in the arbitration proceedings may not be retried in an action brought upon the award. As Mr. Justice STERN stated in *Goldstein et al. v. International Ladies' Garment Workers' Union et al.,* 328 Pa. 385, 196 A. 43, at page 389: "An arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, and his award will not be reviewed or set aside for mistake in either; otherwise arbitration proceedings, instead of facilitating the settlement of controversies, would serve but to delay the final determination of the rights of the parties: *Pierce Steel Pile Corporation v. Flannery,* 319 Pa. 332, 339, [179 A. 558]." See also *Canuso et al. v. Philadelphia,* 326 Pa. 302, 308, 192 A. 133.

*Gowen v. Pierson,* 166 Pa. 258, 31 A. 83, was a suit on an award made by certain architects as named arbitrators in a building contract. The lower court discharged plaintiff's rule for judgment for want of a sufficient affidavit of defense. In reversing and ordering judgment entered for plaintiff, Chief Justice STERRETT, pointed out that a party to an arbitration agreement who refuses to take part in arbitration proceedings "is not in a position to raise questions which he might have presented to the arbitrators, or to re-open,

in this action on their award, questions upon which they were authorized to pass and did in fact determine in making up their award."

Under these authorities, it is clear that the rule principally relied upon by the court below is not applicable here.

The serious question remaining is whether or not the other averments in defendant's affidavit, taken at their face value, show that the arbitration tribunal did not have jurisdiction to proceed to the consideration and determination of the dispute between the parties. It is not suggested that the association violated any of its rules in the course of its procedure; the contention of defendant is that it did not have jurisdiction to undertake the arbitration.

The averments of the affidavit attacking the jurisdiction of the arbitration tribunal read:

"Defendant avers that said Liverpool Cotton Association, Ltd., had no *jurisdiction* to arbitrate the said dispute because the *plaintiff had made no effort to settle the dispute amicably* as provided in said contracts, and for the further reason that the defendant *revoked* said arbitration agreement and refused a submission, as will appear by reference to [the letters above mentioned]." (Italics supplied.)

It is defendant's contention here, and in this it was sustained by the lower court, that an attempt at an amicable settlement by plaintiff was, under the terms of the arbitration provision of the contracts, a *condition precedent* to arbitration, without the performance of which the arbitrators had no jurisdiction to proceed or make an award.

Whether or not the use of the phrase, "any disputes ...... will be settled amicably," was intended to, and does, mean that an attempt at amicable settlement should be a condition precedent to the right of the arbitrators to act, is a matter of law—the proper construction of the written contract. The ordinary rules of con-

struction of contracts in general are applicable here. The primary rule is to ascertain the intention of the parties as shown by the surrounding circumstances: *Bangor Peerless Slate Co. v. Bangorvein Slate Co. et al.,* 270 Pa. 161, 165, 113 A. 190; *Kaufmann's Estate,* 137 Pa. Superior Ct. 88, 92, 8 A. 2d 472.

Since, however, this contract is one providing for the arbitration of disputes, it must be construed in the light of existing arbitration law, and the general objects sought to be obtained by parties entering into such contracts. When so considered, we are not convinced the construction placed upon the phrase by the court below is correct.

Whatever may have been the previous attitude of courts toward such agreements, since the Act of April 25, 1927, P. L. 381, (5 PS §161) the courts of this state have had no hesitancy in enforcing contracts containing arbitration clauses, even where the arbitrators were not named in advance. As stated by Mr. Justice KEPHART (later Chief Justice) in *Bashford v. West Miami Land Co.,* 295 Pa. 560, 568, 145 A. 678: "Where parties to an executory contract agree to submit the matter in dispute to a named individual, they are bound by their contract and cannot seek redress elsewhere until the arbitrator chosen has been discharged either by the rendition of an award or otherwise (*Commercial Union Assurance Co. of London v. Hocking,* supra, [115 Pa. 407] 414), and this rule is now applicable, under the Act of April 25, 1927, P. L. 381, where the contract provides for arbitration, but the arbitrators are not named. It is clear every reasonable intendment will be made in favor of the validity of such agreements: *Curran v. Philadelphia,* 264 Pa. 111, 120, [107 A. 636]."

Our Supreme Court in *Nippon Ki-Ito Kaisha, Ltd. v. Ewing-Thomas Corp.,* 313 Pa. 442, 170 A. 286, 93 A. L. R. 1067, held that the Court of Common Pleas of Delaware County could refer the dispute between a buyer and seller of raw silk to arbitration, as provided

in their agreement, although the arbitration was to take place in New York City. Mr. Justice SIMPSON, quoting from *Gilbert v. Burnstine,* 255 N. Y. 348, 174 N. E. 706, 73 A. L. R. 1453, a case involving the validity of an award by London arbitrators under the English Act, made pursuant to an arbitration clause in the contract of sale, stated (page 448) : "Settlements of disputes by arbitration are no longer deemed contrary to public policy. Indeed, our statute encourages them. Contracts directed to that end are now declared valid, enforceable, and irrevocable save upon such grounds as exist at law or in equity for the *revocation of any contract* ......" (Italics supplied.) Later, at page 452 of the opinion, he pointed out that the legislature of Pennsylvania has, like New York, expressed the public policy of this Commonwealth to enforce provisions for arbitration.

"Whether a promise is expressly conditional, and if so what is the nature of the condition, depend upon interpretation": Restatement, Contracts, Section 258. It is unnecessary to define a condition precedent at length, or point out the effect of non-fulfillment. Admittedly, if an attempt at amicable settlement constituted a condition precedent to arbitration, plaintiff did not comply with that condition.

It may well be doubted whether the phrase was ever intended to be anything more than a mutual promise by the parties that they would endeavor to settle amicably any dispute which might arise.

However that may be, we are of opinion that it should not, in the light of the existing law on the subject, be construed as making an attempt at settlement a condition precedent to the arbitration and a limitation upon the arbitrator's authority to act. Certainly the jurisdiction of the arbitrators is not *expressly* conditioned upon an attempted settlement. Where an act or event mentioned in a contract is not expressly made a condition precedent, it will not be so construed unless

such clearly appears to be the intention of the parties: *The Fame Insurance Company's Appeal*, 83 Pa. 396, 411, 412. In case of doubt as to whether words create a promise or an express condition, they are to be interpreted as creating a promise: Restatement, Contracts, Section 261.

Moreover, this being an arbitration agreement, it should be liberally construed, so as to give effect to the primary intention of the parties, and every reasonable intendment should be made in favor of its validity: *Bashford v. West Miami Land Co.*, supra; *Curran v. Philadelphia*, 264 Pa. 111, 120, 107 A. 636. The many cases holding submission to arbitration, under contracts providing therefor, to be a condition precedent to the right to bring a common law action on the contract (*Quigley et al. v. DeHaas*, 82 Pa. 267; *Hartupee v. City of Pittsburgh*, 97 Pa. 107; *Hostetter v. City of Pittsburgh*, 107 Pa. 419; cf. *Howard Insurance Co. of N. Y. v. Hocking*, 115 Pa. 415, 8 A. 592,) are based upon the proposition that arbitration should be favored. Construing such a phrase as we have here to be a condition precedent to the right of the arbitrators to act would be directly contrary to that policy.

Furthermore, the statement in the contract that disputes "will be settled amicably, or if this should not be possible by arbitration" is not sufficiently definite to make a formal effort for an amicable settlement a condition precedent. Obviously, actual settlement cannot be a condition precedent to arbitration; the former would do away with the necessity for the latter. If an *attempt* at settlement, as distinguished from settlement, be the condition precedent, when has the condition been complied with? What constitutes a sufficient *attempt* at amicable settlement by one of the parties? To hold such an indefinite act or event an express condition of the arbitrators' authority to act would seem to be unreasonable and hardly within the contemplation of the parties, especially in view of the general purpose of

such clauses. It is, of course, preferable to settle any dispute amicably, if possible, and ordinarily the way is open to both parties to pursue such a course. It seems to us that the phrase here used is little more than a general statement of policy adopted by the parties.

Defendant, having stated its side of the dispute to the association in its letter of February 2, 1938, without raising any question relative to, or themselves suggesting, an amicable settlement, and having asserted in its letter of March 15th that it was "absolutely through with plaintiff," cannot justly complain at this stage of the proceedings of plaintiff's failure to make an effort which defendant had already declared would be futile.

The other defense set up in its affidavit, although defendant makes no point of this in its brief, is that "defendant revoked said arbitration agreement and refused a submission."

Although our earlier decisions gave a party a right to revoke, at any time before the award, his agreement to submit a dispute, in cases where the arbitrators had not been named, no such distinction now exists and in this respect all such agreements are on the same basis: *Bashford v. West Miami Land Co.,* supra, at page 568.

The case of *Frederick v. Margwarth,* 221 Pa. 418, 70 A. 797, involved a suit upon a named arbitrator's award. Defendant, at the second hearing on the arbitration had attempted to revoke the appointment of the arbitrator. Affirming a judgment for plaintiff in a suit brought upon the award, Mr. Justice FELL (later Chief Justice) stated (page 420) : "The agreement to refer was a part of the contract into which the parties entered, and the defendants could not withdraw from it: *Kennedy v. Poor,* 151 Pa. 472, [25 A. 119] ; *Gowen v. Pierson,* 166 Pa. 258, [31 A. 83] ; and *McCune v. Lytle,* 197 Pa. 404, [47 A. 190]. In the case last cited it was said by our Brother BROWN: 'If the agreement was a mere naked submission, either party could have revoked it before the award; but if it had become a

contract between them, it bound each as such, and could then be revoked only by mutual consent.' "

As already shown, contracts containing clauses providing for the settlement of disputes by arbitration are now valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract: *Nippin Ki-Ito Kaisha, Ltd. v. Ewing-Thomas Corp.*, supra, page 448. The above mentioned letters written by defendant to the association, relied on in the affidavit as constituting a revocation of the arbitration clause, are clearly insufficient. They merely ignored the request that defendant name its arbitrator and stated no legal or equitable ground for abrogating the arbitration provision of the contracts.

For the reasons thus stated a majority of the members of this court are of opinion the court below erred in holding the affidavit of defense sufficient to prevent judgment. The assignment of error to the order of October 27, 1939, discharging appellant's rule for judgment is sustained.

Order reversed and record remitted to the court below, with directions to enter judgment against defendant for the amount claimed by appellant, unless other legal or equitable cause be shown why judgment should not be so entered.