## Roberts Estate.

468

Argued September 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Charles F. C. Arensberg,* with him *Ella Graubart,* and *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Warren H. Van Kirk,* with him *W. W. McAdams* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, October 31, 1944:

This is a claim against the estate of a decedent on a quantum meruit for the value of services rendered upon the breach of an alleged parol contract of decedent to will claimant his entire estate. The auditing judge disallowed the claim. The court in banc sustained exceptions to the adjudication and allowed the claim, from which the auditing judge dissented.

Claims against a decedent's estate for wages for personal services, where it is alleged that the same are to be paid for by testamentary provision, must be examined

with great care. The applicable principles of law are comprehensively stated in *Mooney's Estate,* 328 Pa. 273, where MR. JUSTICE DREW said (page 274): "[Claimant's] burden . . . is extremely heavy. We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion (*Gross's Est.,* 284 Pa. 73, 75; *Reynolds v. Williams,* 282 Pa. 148, 150) and must be established by evidence 'clear, precise and indubitable': *Copeland's Est.,* 313 Pa. 25, 29; *Rocks v. Sheppard,* 302 Pa. 46, 50; see also *Calvert v. Eberly,* 302 Pa. 152; *Goodhart's Est.,* 278 Pa. 381. Furthermore, [claimant] must overcome a presumption that any services rendered were paid for from time to time while they continued: *Gross's Est.,* supra; *Flaccus v. Wood,* 260 Pa. 161. This presumption 'will gather strength with each succeeding year, and the evidence to overthrow it must of course be correspondingly increased': *Gregory v. Com.,* 121 Pa. 611, 622; *Gilbraith's Est.,* 270 Pa. 288, 291. Finally, the finding of the auditing judge who saw and heard the witnesses is conclusive where there is evidence to support it, and it is not based on a capricious disbelief of the witnesses: *Osterling's Est.,* 323 Pa. 23; *Pusey's Est.,* 321 Pa. 248, 261; *Copeland's Est.,* supra."

The basis for the claim is an alleged parol agreement made on January 31, 1924, between the decedent and the claimant in the home of a neighbor named Bernhardt. It is maintained that decedent agreed with claimant that if she would continue to live in decedent's home and do the housework everything which decedent possessed would go to claimant at decedent's death. The question initially presented is whether such parol agreement was proved with sufficient positive, direct and definite evidence.

Claimant, when a young girl, was taken from an institution by decedent and his wife. She resided with them for some years prior to the wife's death on January 23rd, 1924. Claimant was employed in a nearby grocery

store. She worked at the store during the day and assisted with the housework at night. Claimant also cared for decedent's wife during the illness preceding her death. The conversation which it is contended constituted the contract took place after the wife's funeral, upon the return of decedent and claimant from the burial. The parties had been invited to supper by the neighbors Bernhardt. The women prepared and served the meal and cleared the table while decedent and Mr. Bernhardt carried on the conversation in question. Mr. Bernhardt inquired of decedent concerning his future plans, whereupon decedent is alleged to have made the statement hereinafter quoted. Claimant remained with decedent and performed the domestic service as theretofore. On September 14, 1932,—over eight years after the making of the alleged contract—decedent remarried. Some five or six weeks thereafter, at decedent's suggestion, claimant left the home. Reversing the findings of fact and conclusions of law of the auditing judge that the claim had not been sufficiently proven, the court in banc allowed the claim for a period of 446 weeks, at the rate of $12 per week, a total of $5,352.

Mr. Bernhardt, the neighbor, was the only witness to testify as to the terms of the alleged contract. His testimony was: "Q. Now after the dinner was over was there any conversation between you and Mr. Roberts and Alberta Babel? A. Well, of course we were interested, naturally would be, in what they were going to do; so I asked Mr. Roberts and he said that Alberta had said maybe she was going to leave, now that Mrs. Roberts was gone, and that he had been talking to her, didn't want her to leave, and he said that he was willing to live on there if Alberta would agree to it, and he said that anything that he had naturally would be Alberta's at his death, that he would make provision to that effect, or, as you might say, a will, if Alberta would agree. Of course he stipulated that Alberta would work at the store and take care of the house in the evening, which Alberta did,

to my knowledge, as far as I know, after, as long as we lived there and afterwards; and Alberta agreed to the proposition."

The auditing judge refused to accept this evidence as credible. He wrote: "As it fell from the lips of the witness the testimony of Henry Bernhardt was hesitant, excursive, unsure. The impression which he gave while on the stand was that of a man cudgeling his brains in a not very successful effort to recall matters which had transpired almost twenty years ago and in which he was not particularly concerned at the time they occurred. It lacked probative weight."

The refusal of the auditing judge to accept this testi-mony was not based upon capricious disbelief. He assigned very sound reasons for his rejection. He very carefully considered what weight or value could be ascribed to such evidence. If the manner of the witness was "hesitant, excursive and unsure" and he was "cudgeling his brains in a not very successful effort to recall matters which had transpired almost twenty yeags ago", a judge charged with the duty of making findings of fact was not obliged to accept such testi-mony as a true and sufficient basis to support a finding that the parties had come to an agreement. Where an auditing judge sees and hears the witnesses, it is for him to determine their credibility and the weight to be given to their testimony because of their character, intelligence and knowledge of the subject, and his findings, like those of a jury, will not be disturbed except for clear error. *Steinmeyer v. Siebert,* 190 Pa. 471, 42 A. 880; *Belmont v. Heist,* 300 Pa. 542, 151 A. 15; *Kovacevich's Est.,* 309 Pa. 268, 163 A. 514; *Swoope's Est.,* 317 Pa. 584, 177 A. 748; *Deal's Est.,* 321 Pa. 484, 184 A. 453; *Hollowell's Est.,* 120 Pa. Superior Ct. 576, 182 A. 779. We are not impressed by the reason given by the court in banc for rejecting the auditing judge's finding.

But even if Mr. Bernhardt's testimony had been accepted by the auditing judge, it still did not establish

proof of a contract between the decedent and claimant. It did not prove an offer by decedent and acceptance by claimant. At most it was proof of declarations made to a third party, which alone, does not constitute a contract: *Donohoe's Estate,* 271 Pa. 554, 115 A. 878; *Reynolds v. Williams,* 282 Pa. 148, 127 A. 473.

An examination of the testimony of claimant's other witness discloses that such evidence constitutes but loose declarations of testamentary intentions, which are not sufficient to warrant recovery. *Grossman v. Thunder,* 212 Pa. 274, 61 A. 904; *Winfield v. Beaver Co.,* 229 Pa. 530, 79 A. 138; *Brown v. McCurdy,* 278 Pa. 19, 122 A. 169; *Bean's Est.,* 264 Pa. 131, 107 A. 671; *Witten v. Stout,* 284 Pa. 410, 131 A. 360; *Collins' Est.,* 83 Pa. Superior Ct. 31; *Blumberg's Est.,* 115 Pa. Superior Ct. 310, 175 A. 741; *Dunn v. Dunn,* 118 Pa. Superior Ct. 533, 179 A. 795; *Reed Est.,* 152 Pa. Superior Ct. 389, 33 A. 2d 231.

The claimant was ruled to be incompetent to testify in support of her claim against the estate because disqualified as a surviving or remaining party under the Act of May 23, 1887, P. L. 158, 28 PS section 322. This was correct. She was not rendered competent generally under the Act of June 11, 1891, P. L. 287, 28 PS section 325, because of introduction of bank records to establish that some years after claimant had left decedent's home, a savings fund account had been changed from a joint account between decedent and claimant, to an account in the name of decedent in trust for claimant: *Krumrine v. Grenoble,* 165 Pa. 98, 30 A. 824; *Bowman's Estate,* 301 Pa. 337, 152 A. 38; *Volkwein v. Volkwein,* 146 Pa. Superior Ct. 265, 22 A. 2nd 81.

The decree of the court below is reversed. Distribution is directed to be made in accordance with the adjudication of the auditing judge. Costs to be paid out of the estate.