## Rothermel Estate

*Michael J. O'Donnell*, for exceptant.

*Hollis P. Breeding* and *Ralph S. Croskey*, contra.

LADNER, J., December 10, 1948.—By the first three exceptions, exceptant charges that the auditing judge erred in refusing to sustain objections made by her to

credits taken in the trustee's account for repairs to dwelling houses, constituting part of the trust estate.

Exceptant is one of the life tenants entitled to one third of the net income under testatrix's will establishing the trust. The basis of her objections was that the leases contained provisions imposing upon the tenant the duty of making repairs.

Some 18 leases for month-to-month terms were offered in evidence and while some differ somewhat in form and phraseology it is admitted by the trustee's counsel that all contained clauses imposing on the tenant the duty of keeping the leased premises "in good order and repair, reasonable wear and tear . . . excepted."

Exceptant complains that notwithstanding these provisions in the leases, the auditing judge refused to surcharge the trustee or to disallow the credits taken for the repairs in the account. It is, of course, true, as the learned auditing judge conceded, that in view of the lease provisions there was no obligation on the trustees to make repairs. It is also true that trustee ordinarily must enforce the provisions of the leases especially such as impose obligations on the tenant as part of the rent, and failure to do so may result in surcharge, as in Hollins' Estate, 29 D. & C. 307. However, where the rented properties are small dwelling houses, such as are occupied by people of modest means, and where the leases, as most of them here, make the duty to repair only a personal covenant of the tenant, it is well known that such clauses are not usually enforced because of attendant difficulties. In such circumstances, landlords are confronted with a choice of permitting their properties to deteriorate for want of needed repairs, or making such repairs themselves. If they make repairs themselves, and the tenants refuse to pay for the same, the only means of enforcing the repair covenants is to evict the tenant for breach of

lease, or sue for the cost of repairs. Either remedy in the end is apt to prove more costly than the repair bill.

What then, under such circumstances, is the trustee's responsibility? "A trustee is required to exercise common skill, common prudence and common caution, and is not liable when he acts in good faith as others would do with their own property": Kline's Estate, 280 Pa. 41, 44. To determine whether the trustees here have met that test, it would be necessary to consider item by item the repair expenditures objected to and weigh them in light of the surrounding circumstances. These circumstances would include among others the cost and extent of repairs, the financial responsibility of the tenant, the expense of evicting him or suing him, and the likelihood of securing a better tenant in his place, and always remembering that strict enforcement of a technical right may prove both impractical and costly.

In lieu of such appraisal of the circumstances surrounding each item of repair, counsel for exceptant suggests that we ought to consider that the scarcity of houses prevailing in recent years in Philadelphia has put tenants in such fear of evictions that it is no longer necessary to pamper them, and that we should therefore hold that the repair covenants could have been easily enforced. No evidence of such facts, if the described condition exists, appears of record. If we were to take judicial notice of the asserted fact, we would at the same time also have to take judicial notice of the existence of rent control legislation, and of the rulings of the Federal Rent Control Administration to the effect that if the landlord prior to the effective date of the Rent Control Law had customarily made repairs despite the tenant's obligation under the lease, he must continue to do so, otherwise, the change of prac-

tice would be held equivalent to a rent increase and subject the landlord to penalties. So also, we would have to take judicial notice of the city's Rent Control Ordinance approved August 13, 1947, under which the prompt eviction procedure formerly available under amicable actions and confession of judgment for possession, has been virtually suspended by the provisions requiring the landlord before instituting eviction proceedings to give the tenant such notice as the city's rent control commission deems adequate, not exceeding one year. The responsibility of the trustees here, for making the repairs complained of, cannot be measured by so simple a yardstick as exceptant's counsel urges us to adopt.

In the case before us, the learned auditing judge did not find it necessary to review and appraise each item of repairs objected to because he found as a fact, upon adequate evidence, that exceptant had full and complete knowledge of the practice of the trustees in making repairs and in effect acquiesced in the way the trustees interpreted their responsibilities under the leases. Prior accountings of the trustees showed it had always been the custom or policy of the trustees to make needed repairs. This was the third account. The first was filed in 1938 and showed repair credits taken for some of this same real estate as far back as 1919. The second account, which was filed in 1941, contained similar credits for repairs. To such credits in neither account was objection made, though the auditing judge found exceptant had full and complete knowledge of the trustee's practice with respect to repairs. The testimony shows that up to 10 years ago she lived with the trustees and assisted in renting some of the properties and used leases in form similar to the present ones.

One of the trustees also testified that in 1944 exceptant was sent a copy of an interim account showing expenditures made for repairs down to September, 1944, and which are included in the present accounting. To these exceptant made no objection. It is true, exceptant's son sought to deny this testimony, but an auditing judge's fact finding where the credibility of witnesses is involved, is like that of a jury, not to be disturbed except for clear error: Roberts' Estate, 350 Pa. 467; Hollins' Estate, 29 D. & C. 307. No such error has here been shown. From the facts so found, the auditing judge correctly concluded that exceptant by failing to object and by accepting the income derived from the properties in question, with knowledge of the fact, must be assumed to have approved the practice of which she had the knowledge. Her silence over a number of years amounts to acquiescence and she cannot object now to that which she has by her conduct approved. These exceptions (1, 2, 3) must therefore be dismissed.

By exception no. 5, exceptant complains of the auditing judge's refusal to sustain her objection to an item of $600 appearing on page seven of the account, being counsel fee for services rendered in the appeal to the Supreme Court. As to this item the learned auditing judge said: "The objection made was to a counsel fee paid for services rendered to the accountants in an appeal taken to the Supreme Court by Katherina Rothermel, which appeal was dismissed. The auditing judge rules that the fee was well earned as a study of the prior record including the appeal proceeding will testify and he therefore approves the credit." As this court has frequently said, matters of counsel fees are peculiarly for the auditing judge and his conclusion, like the verdict of a jury, will not be disturbed unless glaring error is apparent: Bernstein's Estate No. 1, 25 D. & C. 626; Dunmore's Estate, 14 D. & C. 630;

Wasserman's Estate, 13 D. & C. 354. See also Rambo's Estate 327 Pa. 258. No such error has been shown to us, hence this exception must also be dismissed.

By exceptions 6, 7 and 8 exceptant raises the question of a duplication of a credit taken for $1,500, part of a counsel fee allowed in a prior account confirmed in 1943. Counsel for accountants frankly conceded at the argument that it looked as though, through inadvertence, there was such a duplication and asked an opportunity to recheck the credits of the account. Since then we have been informed by him that there is such a duplication and that the exceptions properly should be sustained. Accordingly exceptions 6, 7 and 8 are now sustained and the item of $1,500, shown on page seven of the account before us, is stricken out. As thus modified the adjudication is confirmed absolutely.